**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 21, 2015[*]
Decided April 22, 2015

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 14-3050

| | |
|---|---|
| DENNIS SPEROW, | Appeal from the United States District |
|     *Plaintiff-Appellant,* | Court for the Southern District of Illinois. |
| | |
|     *v.* | No. 3:12-CV-851-NJR-DGW |
| | |
| VIPIN SHAH, et al., | Nancy J. Rosenstengel, |
|     *Defendants-Appellees.* | *Judge.* |

**O R D E R**

Dennis Sperow, an Illinois inmate, appeals from the grant of summary judgment against him in this suit under 42 U.S.C. § 1983 asserting that two prison doctors were deliberately indifferent in failing to treat both his Hepatitis C and his inguinal hernia. Because Sperow furnished no evidence suggesting that the doctors provided constitutionally inadequate treatment, we affirm.

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

Upon arriving at Pickneyville Correctional Center in 2007, Sperow had type 1A Hepatitis C. Because of this condition, his blood was repeatedly tested over the following years. In 2011 he began being treated by Dr. Dina Paul, a physician employed by Wexford Health Sources, Inc., and also the prison's hepatitis coordinator. At the first examination, Dr. Paul noted that Sperow had elevated liver enzymes and low blood platelets. Because pharmacological treatment is rigorous and can be difficult for patients to tolerate, Dr. Paul decided to monitor Sperow's liver blood tests, and she authorized vaccinations for Hepatitis A and B. Several months later Sperow was seen by Dr. Vipin Shah, also a physician employed by Wexford Health Sources, Inc., who agreed with Dr. Paul's decision to monitor Sperow's blood work. In early 2012 Sperow saw Dr. Paul again and complained of weakness, ear and eye pain, an upper respiratory infection, nausea, and confusion. Sperow's liver enzymes were again elevated and Dr. Paul again did not advise pharmacological treatment, because of the severe side effects and the need to adhere strictly to the treatment regimen. Because Sperow showed signs of confusion, which can be related to liver function, Dr. Paul had further labs drawn. Sperow's ammonia levels were elevated; elevated ammonia levels together with cirrhosis are consistent with hepatic encephalopathy, a buildup of toxins in the blood affecting brain function. Dr. Shah treated this condition with a medication called Lactulose. Several months later Dr. Paul examined Sperow because of his complaints of multiple physical ailments and confusion; Sperow's liver enzymes and ammonia levels were elevated, and he again had a low platelet count. Dr. Paul continued to believe that Sperow was still not a good candidate for pharmacological treatment because his health was unstable, he did not understand his diagnosis, and his repeated refusal to seek appointments in the health care unit suggested that he could not adhere to a strict treatment regimen. Dr. Paul recommended continued monitoring of his condition.

Sperow's other serious condition was an inguinal hernia that developed in 2009. He was seen two days later, and doctors determined that the hernia would disappear or flatten if he laid down. When he was next seen several months later, he told a nurse that he had no pain from the hernia when he laid down, and at subsequent follow-up visits his hernia was found to be easily reducible by laying down. By late 2011 Sperow was being seen by Dr. Shah, who prescribed an over-the-counter pain medication and advised Sperow to wear a truss—a supportive undergarment belt that relieves discomfort by keeping the hernia in place. Dr. Shah continued to monitor Sperow's hernia through June 2012, examining him for tenderness that might indicate intestinal strangulation, swelling, or infection.

Sperow brought this suit under the Eighth Amendment, asserting that Dr. Paul failed to treat his hepatitis by not recommending the pharmacological treatment and that Dr. Shah should have recommended surgery to repair his hernia. Adopting the report and recommendation of a magistrate judge, the district judge granted both doctors summary judgment. The district judge found that Drs. Shah and Paul provided reasonable care and that Sperow was not entitled to demand the specific care of his choice. And because the care Sperow received was reasonable, the judge dismissed Louis Shicker, in his capacity as Medical Director for the Illinois Department of Corrections, because he no longer was a potentially necessary party to the action.

On appeal Sperow challenges the grant of summary judgment for Dr. Paul, who, he maintains, acted with deliberate indifference by refusing pharmacological treatment. The district court, however, correctly found that Dr. Paul used her medical judgment in discounting Sperow as a candidate for such treatment. Treatment decisions are entitled to deference unless they so depart from professional standards as to call into question whether the doctor was exercising professional judgment. *See Pyles v. Fahim*, 771 F.3d 403, 409, 412 (7th Cir. 2014); *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008). Sperow offered no evidence to show that Dr. Paul acted without exercising her medical judgment in determining that he was not a good candidate for pharmacological treatment.

Sperow also challenges the grant of summary judgment for Dr. Shah on the grounds that, in his view, surgery is the only proper way to treat a hernia. But Sperow is not entitled to demand the specific treatment of his choice, as the district judge explained. *See Pyles*, 771 F.3d at 409, 412; *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). Nor can Sperow point to evidence of deliberate indifference in his care: Dr. Shah regularly monitored his hernia for signs of deterioration and, after determining the hernia was easily reducible, prescribed pain medication as well as a truss. Sperow may have preferred surgery but he introduced no evidence to question Dr. Shah's medical judgment that pain relief, a truss, and continued monitoring were sufficient measures to treat his condition.

Sperow does not challenge the dismissal of Dr. Louis Shicker from the action. We have reviewed Sperow's remaining contentions and conclude that none has merit.

AFFIRMED.